**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **FRED DEMBSKI**, individually, and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 3:18-cv-02042-G |
| v. | § § | |
| **THE DALLAS MORNING NEWS, INC.,** a Texas corporation, | § § § | |
| *Defendant.* | § § | |

## DEFENDANT'S ANSWER TO CLASS ACTION COMPLAINT

Defendant The Dallas Morning News, Inc. ("TDMN" or "Defendant") files this Answer to Plaintiff Fred Dembski's Class Action Complaint (the "Complaint"). [Dkt. 1]. TDMN denies all allegations made in the Complaint, whether expressed or implied, that are not specifically admitted below.

## INTRODUCTION

1.      Dallas Morning News was founded in 1885 as a spin-off of the Galveston Daily News. By late 1991, it was the largest newspaper in the Dallas market, and maintains one of the 20 largest paid circulations in the United States.

**RESPONSE:** TDMN admits the allegations contained in Paragraph 1.

2.      Notwithstanding, Dallas Morning News has seen a considerable drop in their newspaper subscription base as consumers are turning away from print media in favor of digital news media. Between 2013 and 2017, the newspaper's daily circulation has dropped from 271,189 to 214,423. Between 2013 and 2017, Sunday circulation dropped from 379,379 to 288,059, as can be seen in the chart below:



**RESPONSE:** TDMN denies that there has been a "considerable" drop in its subscription base. TDMN lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 2 and therefore denies same.

3.      Newspaper subscriptions are a vital part of Dallas Morning News' revenue stream. As a result, the company has put great emphasis on customer retention efforts while working to solicit additional subscribers through telemarketing.

**RESPONSE:** TDMN admits that newspaper subscriptions are a source of revenue.  TDMN admits that it makes efforts to retain existing customers and to solicit new subscribers.  TDMN denies the remainder of the allegations contained in Paragraph 3.

4.      Unfortunately, Dallas Morning News's telemarketing efforts regularly result in repeated calls to consumers whose phone numbers are registered on the National Do Not Call Registry ("DNC"). In Plaintiff's case, Dallas Morning News's telemarketing scheme resulted in

no fewer than 7 unsolicited calls to Plaintiff's landline phone, without his consent, despite Plaintiff having his phone number registered with the DNC to prevent such calls.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 4.

5.     In response to these calls, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease placing unsolicited calls to consumers' telephone numbers when those telephone numbers are registered on the DNC, as well as an award of statutory damages to the members of the Class and costs.

**RESPONSE:** TDMN admits that Plaintiff filed this lawsuit.  TDMN denies that it places unsolicited calls to numbers on the federal DNC; that Plaintiff is entitled to any relief; and that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

## THE PARTIES

6.     Plaintiff Dembski is a Grapevine, Texas resident.

**RESPONSE:** TDMN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6 and therefore denies same.

7.     Defendant Dallas Morning News is a Texas corporation headquartered in Dallas, Texas. Defendant conducts business throughout this District and the State of Texas.

**RESPONSE:** TDMN admits the allegations contained in Paragraph 7.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

**RESPONSE:** TDMN does not challenge federal subject matter jurisdiction.

9.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is incorporated and headquartered in the state of Texas, and because the wrongful conduct giving rise to this case occurred in this District. Venue is additionally proper because both Defendant and Plaintiff reside in this District and the calls were directed towards Plaintiff in this District.

**RESPONSE:** TDMN does not challenge personal jurisdiction or venue.  TDMN denies that it committed any wrongful conduct.

## COMMON ALLEGATIONS

**Dallas Morning News Markets its Services by Making Unsolicited Calls to Consumers Without Their Consent and Regardless of Whether Their Phone Numbers Are Registered on the National Do Not Call Registry**

10.     Dallas Morning News places unsolicited calls to consumers, without consent, regardless of whether they are calling numbers that are registered on the DNC.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 10.

11.     Not surprisingly, there are numerous online complaints about Defendant's calls to consumers who never consented to be called:

• "It's the Dallas Morning News trying to get me to take the paper."
• "Call constantly but never leave a message."
• "Unsolicited call"
• "It's the DMN looking to sign up."
• "salesperson for DMN"
• "It's someone calling for subscriptions to the Dallas Morning News."
• "Calls daily – annoying."
• "Dallas Morning News wanting me to give them a credit card number. That'll never happen with the Dallas Morning News."
• "Dallas Morning News cold call"

**RESPONSE:** TDMN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 and therefore denies same.

12.     The phone calls made by, or on behalf of Dallas Morning News have caused frustration and actual harm to consumers throughout Dallas and the State of Texas.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 12.

## PLAINTIFF'S ALLEGATIONS

**Dallas Morning News Repeatedly Called Plaintiff Without His Consent, Despite Plaintiff Registering His Phone Number on the DNC**

13.     On May 18, 2018, Plaintiff registered his landline telephone number on the National Do Not Call Registry.

**RESPONSE:** TDMN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 13 and therefore denies same.

14.     More than 30 days after Plaintiff registering his phone number on the DNC, Plaintiff received unsolicited calls to his landline telephone number from Defendant using phone number 214-630-5097:

- July 9, 2018 at 11:54 AM
- July 10, 2018 at 3:22 PM
- July 11, 2018 at 3:11 PM
- July 12, 2018 at 10:44 AM and again at 5:33 PM
- July 13, 2018 at 4:22 PM
- July 18, 2018 at 4:22 PM

**RESPONSE:** TDMN denies the allegations contained in Paragraph 14.

15.     The purpose of these calls was to promote subscription of The Dallas Morning News newspaper. During the July 18, 2018 call, Plaintiff informed the agent that his phone number was registered with the DNC and then terminated the call.

**RESPONSE:** TDMN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 15 and therefore denies same.

16.     Plaintiff has not subscribed to the Dallas Morning News in approximately 20 years. The calls he received to his landline were made without consent and in violation of the DNC.

**RESPONSE:** TDMN admits Plaintiff is not a current customer and has not been for some period of time.  TDMN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 16 and therefore denies same.

17.     Simply put, Dallas Morning News did not obtain Plaintiff's prior express written consent to place solicitous telephone call to him on his landline.

**RESPONSE:** TDMN denies that it made solicitous calls to Plaintiff.  TDMN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 17 and therefore denies same.

18.     The unauthorized telephone calls made by Dallas Morning News, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Dembski's use and enjoyment of his landline phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 18.

19.     On information and belief, Defendant, or a third-party acting on its behalf, made substantively identical, repeated unsolicited calls *en masse* to the telephone numbers of hundreds or thousands of consumers who had registered their phone numbers on the DNC. To the extent the calls were made on Defendant's behalf to consumers, Dallas Morning News provided the third-party access to its records, authorized use of its trade name, otherwise controlled the

content of the calls, and knew of, but failed to stop, the making of the calls in violation of the TCPA.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 19.

20.     Seeking redress for these injuries, Dembski, on behalf of himself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., which prohibits unsolicited calls to telephone numbers registered on the DNC.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 20.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by Dallas Morning News Agents**

21.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff, or (b) Defendant did not obtain prior express written consent.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 21 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

22.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 22 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

23.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 23 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

24.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant systematically made multiple telephone calls to Plaintiff and consumers whose telephone numbers were registered with the National Do Not Call Registry;
> (b) whether Defendant's conduct constitutes a violation of the TCPA; and
> (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 24 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

25.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class

actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 25 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

26.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 26 and further denies that Plaintiff's putative class is certifiable under Federal Rule of Civil Procedure 23.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Dembski and the Do Not Call Registry Class)**

27.     Plaintiff repeats and realleges the paragraphs 1 through 26 of this Complaint and incorporates them by reference herein.

**RESPONSE:** TDMN incorporates its responses to the preceding allegations referenced by Plaintiff in Paragraph 27.

28.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

**RESPONSE:** TDMN admits the statute quotations are accurate.

29.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

**RESPONSE:** TDMN admits the statute quotations are accurate.

30.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

**RESPONSE:** TDMN admits the statute quotations are accurate.

31.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

**RESPONSE:** TDMN admits the statute quotations are accurate.

32.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 32.

33.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 33 and further denies that Plaintiff or the alleged Class is entitled to damages.

34.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**RESPONSE:** TDMN denies the allegations contained in Paragraph 34 and further denies that Plaintiff or the alleged Class is entitled to damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the

following relief:

> a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;
>
> b) An award of actual and/or statutory damages;
>
> c) An order declaring that Defendant's actions, as set out above, violate the TCPA;
>
> d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and
>
> e) Such further and other relief as the Court deems just and proper.

**RESPONSE:** To the extent required, TDMN denies the allegations in the Prayer for Relief and

further denies that: (a) Plaintiff's putative class should be certified; (b) that Plaintiff is entitled to

any damages from TDMN; (c) that TDMN violated the TCPA; (d) that the requested injunction

is appropriate; and (e) that Plaintiff is entitled to any relief from TDMN.

## AFFIRMATIVE DEFENSES

TDMN asserts the following affirmative defenses:

1.      Any alleged violation was the result of error, and as part of its routine business

practices, TDMN (and/or the third party who made any alleged telephone solicitations on its

behalf) has: (1) established and implemented written procedures to comply with national do-not-

call rules; (2) trained its personnel in procedures established pursuant to national do-not-call

rules; (3) maintained and recorded a list of telephone numbers that the seller may not contact; (4)

used a process to prevent solicitations to any telephone number on any list established pursuant

to the do-not-call rules, employing a version of the national do-not-call registry obtained from

the administrator of the registry no more than 31 days prior to the date any call was made, and

maintains records documenting this process; and (5) it uses a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database; it purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)(i).

2.      Some or all of the calls made to Plaintiff and/or the alleged Class members were made with the applicable recipient's prior express invitation or permission. *See* 47 C.F.R. § 64.1200(c)(2)(ii).

3.      TDMN (and/or the third party who made any alleged telephone solicitations on its behalf) has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of TDMN, including: (1) a written policy, available upon demand, for maintaining a do-not-call list; (2) trained personnel engaged in any aspect of telemarketing to be informed and trained in the existence and use of the do-not-call list; (3) if a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made; persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made not to exceed thirty days from the date of such request; (4) a person or entity

making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; (5) in the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised; (6) a person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls and honor the request for 5 years from the time it is made.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d).

4.      Plaintiff's and/or the alleged Class members' damages, if any, were caused in whole, or in part, by the conduct of Plaintiff, the alleged Class members, and/or person(s) or entities over which TDMN has no control.

5.      Plaintiff's and/or the alleged Class members' claims are barred, in whole or in part, by failure to mitigate damages, if any.

6.      Plaintiff's and/or the alleged Class members' claims are barred, in whole or in part, by the applicable equitable doctrines of waiver, estoppel, laches, set-off, in pari delicto, and/or unclean hands.

7.      Plaintiff's and/or the alleged Class members' claims are barred, in whole or in part, by the applicable statute of limitations.

## PRAYER

WHEREFORE, premises considered, Defendant prays that Plaintiff take nothing against Defendant; that Plaintiff's request to certify his putative class be denied; that Defendant recover

its reasonable costs; and for any such other and further relief at law or in equity to which Defendant may be justly entitled.

Respectfully submitted,

Date:  October 1, 2018                    By:   *s/Shannon Zmud Teicher*
                                          Shannon Zmud Teicher
                                          State Bar No. 24047169
                                          steicher@jw.com
                                          David T. Moran
                                          State Bar No. 14419400
                                          dmoran@jw.com
                                          Eric D. Wong
                                          State Bar No. 24102659
                                          ewong@jw.com
                                          JACKSON WALKER L.L.P.
                                          2323 Ross Avenue, Suite 600
                                          Dallas, Texas 75201
                                          (214) 953-6000
                                          (214) 953-5822 – Fax
                                          ATTORNEYS FOR DEFENDANT
                                          THE DALLAS MORNING NEWS, INC.

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on October 1, 2018, a true and correct copy of the foregoing document was served via the Court's ECF system upon all counsel of record who are registered ECF users pursuant to Local Civil Rule 5.1(d), or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure.

*/s/ Shannon Zmud Teicher*
Shannon Zmud Teicher